Commonwealth *v.* Farrell, Appellant.

Commonwealth *v.* Wiley, Appellant.

Argued October 1, 1935. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW and LINN, JJ.

442

*John P. Betz, Jr.,* for appellant in No. 344.

*Webster S. Achey,* for appellant in No. 345.

*Arthur M. Eastburn,* District Attorney, with him *Edward G. Biester,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE MAXEY, October 17, 1935:

Martin Farrell and Francis Wiley were indicted and tried in the Court of Oyer and Terminer of Bucks County for the murder of William Weiss. The verdicts were guilty and the penalty death. Judgments were pronounced accordingly. These appeals followed.

Appellants had been jointly indicted with one Robert Eckert, but a severance was granted as to him. While living together in Philadelphia appellants became acquainted with Eckert. Subsequently, Farrell and Wiley moved to Torresdale Manor, in Bucks County. Eckert introduced appellants to Robert Mais and George Legenza.* This group planned to kidnap Weiss. On the

---

* Mais and Legenza had previously escaped from prison at Richmond, Va., where they were under sentence of death. In making their escape they added another murder to their long list of crimes. Subsequent to the killing of Weiss they were apprehended in New York, returned to Virginia and executed.

evening of October 26, 1934, Farrell, Wiley, Mais and Legenza carried out this plan in Overbrook Manor, Montgomery County, as Weiss was leaving his garage. He was hidden at Torresdale Manor until November 5, 1934, when $8,000 ransom was paid for his promised release. He was placed in an automobile and driven by his four abductors into Philadelphia County and thence back into Bucks County. Somewhere on the way he was shot and killed. Upon reaching the State Road Bridge across Neshaminy Creek in Bucks County, his body with irons attached was thrown into the creek. It was found on January 22, 1935.

At the trial, Eckert appeared as a witness for the Commonwealth, and this forms the basis for appellants' chief assignment of error. It is urged that he was incompetent in view of the fact that he was jointly indicted with appellants and had entered no plea, the case as to him being undisposed of either by conviction, acquittal or nolle prosequi. We are referred to several early cases arising in those earlier days when witnesses were disqualified for interest, and where it was held that defendants jointly indicted for murder could not testify *for* one another: Shay v. Com., 36 Pa. 305; Staup v. Com., 74 Pa. 458, and Kehoe v. Com., 85 Pa. 127. But Eckert testified for the Commonwealth and *against* appellants. No other answer to the assignment is called for than reference to the Act of May 23, 1887, P. L. 158, which makes all persons fully competent witnesses in any criminal proceeding, with certain enumerated exceptions. The witness whose competency is challenged fits none of the descriptions of the exceptions. With respect to the weight to be accorded the evidence presented by Eckert, the trial judge charged the jury that the "testimony of an accomplice is not looked upon in the law as a very high type of evidence," that "an accomplice is to an extent an impeached witness by reason of his own participation in the crime," and that "his testimony

should be scrutinized with caution." This instruction met the requirements of the situation.

Another assignment of error stressed relates to the refusal of the trial court to affirm the following request for instructions: "If the jury believe from the evidence that the witness, Robert Eckert, was a confirmed opium user, and that the influence thereof impaired his recollection or intellect, his testimony is not entitled to any weight." Since the weight to be accorded the testimony of a competent witness is for the jury's determination, the request was properly refused. See Com. v. Alessio, 313 Pa. 537, 544-5, 169 A. 764. The use of narcotics may impair mind and memory, but the extent of the impairment is for the jury's measurement. For the court to charge that as a matter of law the testimony of a drug addict is entitled to no weight would be tantamount to a ruling that the witness was incompetent.

Error is assigned to the admission in evidence of Farrell's signed confession, on the ground that it was not voluntarily made. He had testified that it had been forced from him by physical abuse and torture, but the witnesses to it testified no force or coercion was used. The circumstances attending it were for the jury's consideration under proper instructions. The court charged the jury to disregard the confession in its entirety unless it was first found to have been made of Farrell's own free will. This was ample on this element of the case. See Com. v. Shew, 190 Pa. 23, 42 A. 377; Com. v. Epps, 193 Pa. 512, 44 A. 570; Com. v. Aston, 227 Pa. 112, 75 A. 1019; Com. v. Spardute, 278 Pa. 37, 122 A. 161; Com. v. Bishop, 285 Pa. 49, 131 A. 657; and Com. v. Jones, 297 Pa. 326, 146 A. 905. The jury was further instructed that the confession was admissible against Farrell alone, and that it could not be considered in determining the guilt or innocence of Wiley. Therefore, the latter has no grounds for complaint.

It is alleged that the homicide was outside of the jurisdiction of the Bucks County court. The Commonwealth produced evidence showing that the murder was committed either within the boundaries of Bucks County or, if in Philadelphia County, within 500 yards of the Bucks County boundary line. This established the jurisdiction of the trial court: Act of March 31, 1860, P. L. 427, section 48.

Finally, it is urged that the indictment was insufficient in that it did not allege that the offense was committed in a vehicle while on a journey that included Bucks County. This argument is founded upon the assumption that the Commonwealth's claim to jurisdiction was based upon the provisions of the Journey Act of March 31, 1860, P. L. 427, section 49, providing that where a crime is committed during a journey upon any vehicle the venue may be laid in any county through which any part of such journey passed. This assumption is erroneous. The evidence as to the locus of the crime made the drawing of an indictment under the Journey Act unnecessary. The proof offered conformed to the pleading that the crime had been committed "within the jurisdiction of this court." This was sufficient: Act of March 31, 1860, P. L. 427, section 48.

The killing of Weiss presents all the elements of brutal, premeditated, cold-blooded murder. The convictions were just and the death penalty appropriate.

The assignments of error are overruled. The judgments and sentences of the court below are affirmed. The record is remitted for purpose of execution.