750 A.2d 261

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Anthony FLETCHER, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 10, 1998.

Decided March 24, 2000.

Reargument Denied May 15, 2000.

John P. Cotter, Philadelphia, for A. Fletcher.

Catherine Marshall, Anthony Pomeranz, Philadelphia, Robert A. Graci, Harrisburg, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

In January of 1993, a jury convicted appellant of first-degree murder [1] and possessing an instrument of crime [2] and imposed a sentence of death.[3] This direct appeal followed.

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 907(a).

3. The jury found two aggravating circumstances: that appellant knowingly created a grave risk of danger to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7), and that at the time of the killing, the victim was or had been involved or in competition with appellant in the illegal sale, manufacture, distribution or delivery of any controlled or counterfeit controlled substance, and the killing resulted from or was related to the association or competition to promote appellant's illegal activities, 42 Pa.C.S. § 9711(d)(14). The jury found two mitigating circumstances: that appellant was under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2), and other evidence of mitigation concerning the character and record of appellant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8). The jury determined that the aggravating circumstances

For the reasons expressed herein, we affirm the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County.

In all cases where the death penalty has been imposed, this Court is required to conduct a review of the sufficiency of the evidence. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26, 454 A.2d 937, 942 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, this Court must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to support all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Bronshtein,* 547 Pa. 460, 469, 691 A.2d 907, 911 (1997), *cert. denied,* 522 U.S. 936, 118 S.Ct. 346, 139 L.Ed.2d 269 (1997). Evidence is sufficient to sustain a conviction for first degree murder where the Commonwealth establishes that the defendant acted with a specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was done with deliberation. 18 Pa.C.S. § 2502(d); *Commonwealth v. Speight,* 544 Pa. 451, 459, 677 A.2d 317, 321 (1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997). Specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the body. *Id.*

Here, Natalie Grant testified at trial that, on March 2, 1992, at approximately 12:59 a.m., appellant approached herself, Vaughn Christopher and Ronald Williams outside of a drug house in Philadelphia. Appellant asked Christopher where his money was and, before Christopher could respond, appellant pulled out a handgun and fired three shots, striking

outweighed the mitigating circumstances. *See* 42 Pa.C.S. § 9711(c)(iv)(the verdict must be a sentence of death if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances).

The trial court also sentenced appellant to two and one-half to five years' imprisonment for the weapons offense.

Christopher twice in the upper torso. Police found Christopher in an unconscious state, leaning against a fence not far from the scene. Christopher died later that day in the hospital.

Police interviewed Williams and Angelic Kirkman, another eyewitness, each of whom identified appellant as the shooter, as well as eight other people who were in the drug house, but who were unable to provide any information regarding the shooting.[1] During the guilt phase of trial, Williams testified and denied having provided a statement to police implicating appellant in the murder. Therefore, his statement to police was admitted as substantive evidence. In that statement, Williams stated that he was three feet away from appellant when appellant approached Christopher, asked for his money and shot Christopher before Christopher could answer. Kirkman's statement to police was admitted into evidence during the guilt phase, although she did not actually testify until the penalty phase.

Based on the information provided by Williams and Kirkman, appellant was arrested on March 10, 1992. After being informed of his *Miranda*[5] rights, appellant gave a statement to police that he approached the victim at the crime scene and punched the victim in the head because the victim had stolen money from him during a crap game. According to appellant, the victim then pulled out a handgun and a struggle ensued. After appellant seized the gun, he claimed that he fired it twice into the victim's leg.[6]

We find that this evidence demonstrates beyond a reasonable doubt that the killing was committed with malice aforethought sufficient to sustain appellant's conviction for first-degree murder.

4. Grant was not interviewed until two weeks after appellant was arrested because police were unable to locate her.

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. As noted previously, the evidence established that the shots were fired in the victim's torso, not his leg.

*Trial court error in the guilt phase*

Appellant alleges several points of trial court error during the guilt phase. First, he argues that the trial court erred in failing to suppress the statement appellant gave to police following his arrest on the ground that the statement was obtained in violation of his Sixth Amendment right to counsel. Appellant alleges that he informed the police investigators prior to questioning that he wished to speak to an attorney but the request was thwarted and that police used psychological pressure to coerce him into giving a statement.

 Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Hall*, 549 Pa. 269, 283, 701 A.2d 190, 197 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

 The Commonwealth bears the burden of establishing a knowing and voluntary waiver of *Miranda* rights. *Commonwealth v. Hughes*, 521 Pa. 423, 443, 555 A.2d 1264, 1274 (1989). In order to do so, the Commonwealth must establish that the proper warnings were given and that the accused manifested an understanding of these warnings.

 At the suppression hearing, the detective who conducted the interview of appellant testified that he read appellant his *Miranda* rights prior to conducting the interview, that appellant signed a form acknowledging that he had been informed of his rights and that he understood them, and that appellant voluntarily waived his rights and gave a statement.[7]

7. Appellant's signed waiver of his rights is included in the record.

The detective further testified that at no point did appellant request an attorney and that, had appellant done so, the detective would have terminated the interview. Conversely, appellant testified that he requested an attorney, but that the detective informed him that in order to get an attorney appellant would need fifty-thousand dollars.

The trial court weighed the credibility of both appellant and the detective and found appellant's claim that he was denied the assistance of an attorney to be incredible. In so concluding, the trial court pointed to several inconsistencies in appellant's testimony at the suppression hearing. *See* Trial Ct.'s Findings of Fact and Conclusions of Law, 5/12/97 at 9–10. That finding is supported by the record and will not be disturbed. *Commonwealth v. McCracken,* 540 Pa. 541, 551, 659 A.2d 541, 546 (1995) (appellate courts must defer to credibility determinations of the trial court, who observed the witness's demeanor first hand). Accordingly, the trial court did not err in denying appellant's motion to suppress.

Next, appellant claims that the trial court erred in instructing the jury that Commonwealth witness Natalie Grant might be a reliable witness if she had not used drugs on the day of the murder. Grant had testified that, although she had formerly used drugs, she had not used any drugs on the night of the murder or the day before the murder. Grant further testified that she was not intoxicated at the time of the murder and that she had stopped using drugs completely three months before the trial. During cross-examination, at one point, defense counsel made the statement that "a junky's word is worthless." N.T. 1/22/93 at 33. Following the prosecutor's objection, the court issued the following instruction to the jury:

... You are to disregard the prejudicial impact of that comment. The law of Pennsylvania is this: The consumption of drugs is relevant to determine credibility if it has been established that a person is under the influence of drugs at the time of the incident which he or she is witnessing at the time of the trial. That's a factor to be taken into consideration in evaluating their testimony as to

a depiction from the witness box respecting the incident that may have occurred. But, first, you have to determine whether or not they, in fact, had taken drugs or were under the influence of drugs at the time of the incidents that were testified to at trial. Most obviously, if someone is drunk or under the influence of drugs at the time they witnessed something, it impairs their ability to observe, retain and recall what they were observing. So, you have to be careful to avoid any prejudicial impact, in light of what I have just instructed you, which is the law of Pennsylvania, from the comment, "all you junkies are unreliable witnesses in the witness box."

N.T. 1/22/93 at 33–34. The court gave a similar instruction in its final charge to the jury. We find no error in the trial court's instruction to the jury. The trial court properly performed its duty by promptly issuing an accurate curative instruction concerning the witness's drug use following defense counsel's baseless personal assessment of a drug abuser's credibility. Accordingly, this claim warrants no relief.

 Next, appellant asserts that the trial court erred in failing to declare a mistrial or give a curative instruction after the jury heard hearsay testimony from Natalie Grant concerning appellant's involvement with drugs.[8] A motion for mistrial is a matter addressed to the discretion of the court. *Commonwealth v. Jones,* 542 Pa. 464, 488–89, 668 A.2d 491, 502–03 (1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996). A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. *Id.*

 In response to questions from the prosecutor regarding a possible motive for the killing, Grant testified that the victim had told her that appellant had given the victim a

---

**8.** Appellant also claims that the trial court erred in failing to give a curative instruction. Although appellant did not request a curative instruction at trial, he has alleged that trial counsel was ineffective for failing to do so. Therefore, this claim is properly before the Court and is discussed *infra*.

package containing drugs. N.T. 1/25/93 at 25.[9] The trial court immediately ordered the witness's testimony concerning motive to be stricken from the record on the basis that the statement was hearsay and advised the jury that it was to disregard the testimony. N.T. 1/25/93 at 26. In its final instructions, the trial court again reiterated to the jury that it could not consider any evidence that the court had ordered stricken from the record. We find that the instruction was sufficient to cure any possible prejudice to appellant.[10] Absent evidence to the contrary, the jury is presumed to have followed the court's instructions. *Commonwealth v. Baker,* 531 Pa. 541, 559, 614 A.2d 663, 672 (1992)(our law presumes that juries follow the court's instructions as to the applicable law). Accordingly, the trial court did not err in failing to declare a mistrial.

Appellant's next claim is that the trial court improperly expressed its opinion in its jury instruction as to appellant's motive, thus prejudicing appellant by effectively removing the determination of motive from the province of the jury. This claim is technically waived due to appellant's failure to object to the instruction when issued.[11] Pa.R.Crim.P. 1119 (no portions of the charge nor omissions therefrom may be assigned as error unless specific objections are made thereto before the jury retires to deliberate); *Commonwealth v. Edmondson,* 553 Pa. 160, 718 A.2d 751, 752 (1998)(due to appellee's failure to

**9.** Appellant also claims that the court should have declared a mistrial after Grant testified that she saw the defendant engaged in drug activity, arguing that such testimony was inadmissible hearsay. Because testimony regarding events that she witnessed personally does not constitute hearsay, that claim is meritless.

**10.** Even though the trial judge ordered the testimony stricken, it should be noted that, during the penalty phase, the jury found as an aggravating circumstance that the victim was or had been involved in competition with appellant in the illegal sale, manufacture, distribution or delivery of any controlled or counterfeit controlled substance, and the killing resulted from or was related to the association or competition to promote appellant's illegal activities, 42 Pa.C.S. § 9711(d)(14). That determination was supported by properly admitted evidence that the murder was drug related. *See* fn. 26, *infra.*

**11.** Appellant does not challenge the effectiveness of his trial counsel for failing to object to this instruction.

object to an instruction when the court issued it, the issue was not properly preserved for appeal). Nevertheless, we may still reach the merits of the claim pursuant to the relaxed waiver rule in direct appeals involving capital cases as stated in *Zettlemoyer, supra* at 26 n. 3, 454 at 942 n. 3.

 The relevant portion of the trial court's instruction concerning motive is as follows:

> Motive, well ... Motive is not an element or part of that definition of a crime or crimes. Motive is defined as some cause or reason that moves the will and induces action. The term motive is used to refer without distinction to external circumstances or to internal, mental or psychological states which motivates a person's actions or conduct. Thus, money, property, gain, something of value or spite, hatred or ill will can be spoken of as motives for a criminal act.
>
> I guess the evidence in this case, and you make your own determination, was that there was a motive, a drug-related transaction in which the deal didn't go through and I guess they talked about the delivery of the cocaine, smoking of the cocaine by the deceased, so I guess you can label the motive money, revenge. You label them....
>
> ... It is entirely up to you to determine what weight, if any, should be given the evidence concerning motive in this case.

N.T. 1/29/93 at 57–59.

Appellant fails to demonstrate how he was prejudiced by the court's instruction. The court merely alluded to evidence produced by the Commonwealth at trial while instructing the jury that it could accept all, part, or none of the evidence. Further, in its final instructions the trial court briefly summarized the trial evidence, but emphasized that the jury's recollection of the evidence controlled and that the jury should disregard any statement of the court that did not accurately reflect the jury's recollection. The court further explained that its summary of the evidence should not be construed to suggest that the court took any position regarding the truth of any testimony. N.T. 1/29/93 at 37–38. Finally, both before and after the instruction on motive, the court summarized

appellant's statement to police in which appellant claimed that he approached the victim after being robbed by him at a crap game, that the victim drew the weapon first and that appellant shot the victim by accident. The court explained that, if believed, appellant's statement entitled him to an outright acquittal. N.T. 1/29/93 at 64–74. Accordingly, no relief is warranted on this basis.

Appellant's next claim is that the trial court erred in refusing to grant a mistrial after the prosecutor questioned on direct examination the detective who interviewed eight individuals shortly after the murder about his efforts to obtain an arrest warrant. Specifically, the prosecutor asked, "Now, after having interviewed Skeet on the 5th and having spoken to the eight people from the drug house and after having spoken to Angelic Kirkman or Poochie, did you prepare a warrant of arrest?" N.T. 1/21/93 at 112. Appellant asserts that the trial court erred in denying defense counsel's motion for a mistrial because the question implied that the eight people had made statements incriminating appellant. We disagree.

The purpose of this line of questioning, as explained by the prosecutor at a sidebar discussion, was to refute defense counsel's assertion that the entire investigation of the matter was based on false information from Natalie Grant,[12] and to demonstrate the chronology of events pertaining to the detective's investigation of the case. Following defense counsel's objection, the trial court issued a cautionary instruction as follows:

12. On cross-examination of Commonwealth witness Ronald Williams, defense counsel attempted to show that Williams falsely implicated appellant in the murder. Williams testified on cross that Natalie Grant must have provided police with false information that Williams was an eyewitness to the murder. N.T. 1/20/93 at 74. In addition, on cross-examination of one of the investigators, appellant attempted to establish that police had fabricated Williams's written account of the murder based on information they had received from Natalie Grant. The detective's testimony was relevant to refute appellant's contention of police fabrication since Natalie Grant was not one of the people interviewed prior to appellant's arrest. Rather, police were unable to locate her until two weeks after appellant's arrest.

> Ladies and gentlemen, I explained probable cause to you in my preliminary instructions. Probable cause is not proof of evidence of guilt. You don't infer guilt because of the fact of an arrest and the legality of the arrest is not a question of concern to you. You already know he's arrested, so do not draw the inference of guilt from that fact of his arrest. This is just a chronological order of events as they transpired.

N.T. 1/21/93 at 116–117. In addition, as part of its final charge, the trial court instructed the jury that the mere fact that the defendant was arrested and accused of a crime was not to be considered as evidence of appellant's guilt. Absent evidence to the contrary, the jury is presumed to have followed the court's instructions. *Baker, supra* at 559, 614 A.2d at 672. Appellant fails to demonstrate that the instruction was inadequate to cure any prejudice that may have stemmed from the prosecutor's question.

 Next, appellant asserts that the trial court "assumed a prosecutorial role" and improperly questioned and cross-examined Natalie Grant and impugned her testimony and credibility. Initially, we note that Natalie Grant was a Commonwealth witness and, therefore, any question the court posed that damaged the witness's credibility would seem only to assist appellant, not prejudice him. Furthermore, the trial court did not ask any questions of the witnesses at the places in the record indicated by appellant. The "interrogation" of which appellant complains actually consisted of instructions to the witness directing her to answer certain questions from defense counsel and not to answer other questions.[13] Therefore, we find appellant's claim to be meritless.

 Next, appellant claims that the trial court erred by instructing the jury that "neither side has the right to prevail

---

13. When defense counsel questioned Grant regarding her criminal history, the witness responded with a vague answer concerning the number of thefts she had committed. Accordingly, the trial court interjected, explaining to the witness the importance of providing an answer and explaining to both the witness and the jury that certain crimes were considered *crimen falsi* in nature and could be properly used to evaluate the witness's credibility.

upon a witness to appear in court." N.T. 1/26/93 at 107.[14] When evaluating a jury instruction, "[w]e will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." *Commonwealth v. Prosdocimo*, 525 Pa. 147, 154, 578 A.2d 1273, 1276 (1990). The law is clear that, under Pa.R.Crim.P. 9016, either side can subpoena a witness to appear in court. To the extent that the court's instruction was unclear or inaccurate, the trial court's instruction nevertheless constituted harmless error under the circumstances of the case.

■ In a related claim, appellant asserts as error that, during the cross-examination of a defense witness, the prosecutor asked the witness why he had refused to speak to the prosecutor prior to testifying for the defense. N.T. 1/26/93 at 106. Following this line of questioning, pursuant to defense counsel's request, the trial court instructed the jury regarding the law on a witness's right to refuse to be interviewed by the opposing attorney in a criminal matter. The court's instruction on the whole centered on a witness's right to refuse to give a statement to the opposing attorney in a criminal matter. The trial court's limited instruction regarding a party's ability to compel a witness to appear in court was not at issue. When the instruction is reviewed as a whole, it clearly instructed the jury that the defense witness was not obligated to speak to the prosecutor prior to trial so as to remove any negative inferences that may have arisen from the witness's pretrial decision not to speak with the prosecutor. Further, at the conclusion of the court's instruction, defense counsel expressed satisfaction with the content of the instruction. N.T. 1/26/93 at 107. Appellant fails to demonstrate how he was prejudiced by the court's instruction. Accordingly, no relief is due.

■ Next, appellant alleges that the trial court erred by failing to grant a mistrial *sua sponte* after certain remarks by

**14.** This claim is technically waived due to appellant's failure to object at trial. Nevertheless, we will address the issue pursuant to the relaxed waiver rule. *Zettlemoyer, supra*, at 26 n. 3, 454 A.2d at 942 n. 3.

the prosecutor during closing argument in the guilt phase. As a general rule, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. *Bronshtein, supra* at 482, 691 A.2d at 917.

First, appellant complains that the prosecutor made remarks that stigmatized defense counsel. Specifically, the prosecutor stated, "I listened to [defense counsel]. It seemed like a totally different man today. It must have been Skippy, the evil twin brother that has been here for the past 10 days. All of a sudden today when he makes his closing argument to you he is like a new man, quiet, subdued, relaxed, calm." N.T. 1/27/93 at 91. The prosecutor went on to state that defense counsel's job was to confuse the jury.

While such personal comments are to be avoided, defense counsel himself first raised the issue of his behavior during trial during the closing argument. Defense counsel apologized for his offensive behavior during trial, admitting that he acted "jerky" and "a little crazy." N.T. 1/27/93 at 21, 38. However, defense counsel also launched personal attacks on the prosecutor and the police witnesses.[15] Further, the trial court noted in its opinion that "defense counsel, indeed, changed his trial demeanor drastically upon delivering his closing argument." Trial Ct. Slip Op. at 55. In light of defense counsel's behavior and his own closing comments regarding his behavior, we find the trial court correctly refrained from declaring a mistrial *sua sponte* with respect to the prosecutor's remarks concerning defense counsel.

15. Specifically, defense counsel stated that that the prosecutor could not seek a first degree murder conviction with a straight face, was extremely aggressive, engaged in overreaching, and that the Commonwealth had lost its moral compass. N.T. 1/27/93 at 24–26, 39–40, 85. Defense counsel asserted that the police had "tunnel vision" and a "myopic viewpoint" and that they had attempted to prejudice the jury. *Id.* at 24, 76.

 Appellant further complains that he was unduly prejudiced by the prosecutor's statement that the evidence that appellant was a drug dealer was overwhelming. However, our review of the record reveals that what the prosecutor actually said was that the *case* against appellant was overwhelming. N.T. 1/27/93 at 135–36. We find that this was a fair comment on the evidence and, thus, no relief is due on this claim.

 Finally, appellant complains that the court erred in failing to declare a mistrial after admonishing the prosecutor for making a sympathy argument to the jury concerning the victim. The prosecutor argued that the victim and Natalie Grant were not "throw away people" because they used drugs and asked the jury what they as members of society were going to do about the murder. N.T. 1/27/93 at 164–65. The trial court sustained defense counsel's objection and instructed the prosecutor to "give up the sympathy provoking argument and go on." *Id.* Appellant fails to demonstrate how the prosecutor's brief statements created a fixed bias or hostility in the minds of the jurors. The court promptly instructed the prosecutor to abandon that line of argument and the prosecutor complied. Additionally, the trial court instructed the jury that counsel's arguments were not evidence. N.T. 1/29/93 at 26–29. Absent evidence to the contrary, the jury is presumed to have followed the court's instructions. *Baker, supra* at 559, 614 A.2d at 672. Accordingly, no relief is warranted.

### *Ineffectiveness of trial counsel in the guilt phase*

 Appellant raises several claims of ineffectiveness of counsel during the guilt phase.[16] In order to establish an ineffectiveness claim, appellant must demonstrate: (1) that the underlying claim is of arguable merit; (2) that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate appellant's interest; and (3) that there is a reasonable probability that the act or omission prejudiced appellant in such a way that the outcome of the proceeding would have been different. *Commonwealth v. Kimball,* 555

16. We note that appellant is represented by new counsel for purposes of appeal.

Pa. 299, 308, 724 A.2d 326, 331 (1999). If it is clear that appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and this Court need not determine whether the first and second prongs have been met. *Commonwealth v. Travaglia,* 541 Pa. 108, 118, 661 A.2d 352, 357 (1995), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

 Appellant first claims that trial counsel was ineffective for failing to object to the trial court's "emphasis" of the criminal record of defense witness, Michael Golden.[17] This claim is meritless. Here, the prosecutor was cross-examining the witness concerning his decision to testify for the defense. Without any prompting from the prosecutor, the witness interrupted the questioning with the following outburst: "If your honor would allow me to speak here about something. You say you pulled my record—." N.T. 1/26/93 at 119. The court interrupted the witness and informed him that his record was not at issue and that no one had asked him any questions regarding his criminal record. The court instructed the witness to merely answer the questions that were asked of him. Thus, contrary to appellant's assertion, the trial court acted to *prevent* the witness from revealing his criminal record. The court was merely reacting to an unsolicited outburst on the part of the witness concerning the witness's criminal record, which the prosecution had not asked about. Accordingly, trial counsel was not ineffective for failing to object to the trial court's efforts to prevent prejudice to appellant from the outburst of a defense witness.

 Appellant's next claim is that trial counsel was ineffective for failing to request a pre-trial psychiatric examination of appellant, given that appellant had previously suffered head injuries during a professional boxing career. This claim is meritless. Appellant fails to offer any evidence of his alleged

17. Appellant also raises the claim that the trial court erred in repeatedly emphasizing the witness's criminal record. Technically, this claim is waived due to counsel's failure to lodge a timely objection at trial. However, we reach the merits of the claim because appellant has also raised counsel's ineffectiveness for failing to object.

mental defects. In addition, the trial court stated in its opinion that it never observed the slightest trace of psychological impairment that would have raised questions as to whether a pre-trial psychiatric evaluation was necessary. Trial Ct. Slip Op. at 65. Appellant testified coherently and articulately at a pre-trial suppression hearing, at the penalty hearing, and at the post-verdict hearing. Accordingly, this claim must fail.

Next, appellant asserts that trial counsel was ineffective for failing to request that the trial court issue a curative instruction after the court struck the testimony of Natalie Grant concerning appellant's motive – the drug transaction with the victim. *See* discussion *supra*. This claim is meritless. As previously discussed, the trial court immediately ordered the witness's hearsay testimony concerning motive to be stricken from the record. N.T. 1/25/93 at 26. The trial court further immediately advised the jury that it was to disregard the testimony. Additionally, in its final instructions, the trial court reiterated to the jury that it could not consider any evidence that the court had ordered stricken from the record. Thus, it was not necessary for counsel to request a curative instruction when the court sufficiently instructed the jury regarding the stricken testimony.

Next, appellant claims that trial counsel was ineffective for allegedly telling appellant that he could not testify during the guilt phase. This claim flies in the face of the record. The trial court conducted a colloquy with appellant on the record concerning appellant's right to testify. Appellant stated under oath that he discussed his right to testify with his trial counsel and that he had made his *own* decision to assert his Fifth Amendment right not to testify. N.T. 1/26/93 at 138–142. The trial court advised appellant that he was under no obligation to take counsel's advice regarding his decision whether or not to testify and appellant indicated that he understood. The trial court specifically asked appellant if he chose to remain silent solely because counsel advised him to do so, and appellant indicated that his refusal to testify was of his own free will. *Id.* Accordingly, no relief is warranted.

■ Appellant next asserts that counsel was ineffective for failing to present certain defense witnesses at trial. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the defendant must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4)ˑ that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant. *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293, *cert. denied,* —— U.S. ——, 120 S.Ct. 422, 145 L.Ed.2d 330 (1999).

■ Appellant argues that defense counsel should have called appellant's aunt, uncle and wife to testify during the guilt phase of trial about his alleged impoverished living conditions, that he had borrowed money from them and that he earned his living as a tailor, for the purpose of contradicting the prosecution's theory of the case that appellant made his money from being a drug dealer. During the penalty phase of trial, defense counsel had called these witnesses to testify as to appellant's familial relationships. Evidence regarding his alleged poverty and sources of income was only elicited by the prosecutor on cross-examination, not by defense counsel. Defense counsel could reasonably have determined that the testimony offered by the witnesses would have been unhelpful to appellant since his alleged poverty may reasonably have been seen by the jury as an incentive for him to get involved in drug dealing.

Moreover, the testimony of appellant's aunt and wife may have been detrimental. Appellant's aunt testified on cross-examination that appellant worked as a tailor during the years in which appellant had indicated on a questionnaire that he was unemployed, casting doubt on appellant's credibility.[18] N.T. 2/2/93 at 92. During appellant's wife's testimony, she revealed that on the night of the murder they had had an argument and that appellant had left the house upset. N.T.

18. The record does not indicate what type of questionnaire contained this information.

2/2/93 at 95–96. Therefore, there was a reasonable basis for counsel's decision not to call any of these witnesses in the guilt phase and appellant is not entitled to relief on this claim.

Appellant next claims that trial counsel was ineffective for failing to object to statements contained in a witness's statement to police pertaining to what the murder victim had related to him about appellant some time before the victim's death. The statements in question were read as part of Ronald Williams's prior statement to the police, which was introduced both as substantive evidence and to impeach Williams.[19] In Williams's written statement, in response to the detective's question concerning the motive for the shooting, Williams replied, "Dope. [The victim] told me that he had f——ed up a package of dope that belonged to [appellant]. He smoke [sic] up all the crack in the package and [appellant] never said anything. [Appellant] just walked up on [the victim] and shot [the victim]." N.T. 1/20/93 at 44.

▆▆▆ The victim's statement to Williams was relevant in establishing the victim's state of mind regarding his relationship with appellant and was therefore admissible under the state-of-mind hearsay exception to establish "the presence of ill will, malice or motive for the killing." *Commonwealth v. Chandler,* 554 Pa. 401, 411, 721 A.2d 1040, 1045 (1998)(murder victim's statement to her mother regarding breakdown in relationship admissible under state-of-mind hearsay exception). *See also, Commonwealth v. Puksar,* 559 Pa. 358, 368, n. 6, 740 A.2d 219, 225 n. 6 (1999)(witness's testimony that victim had said he did not trust appellant and that the victim and appellant were involved in a dispute over the purchase of model trains admissible under state-of-mind exception to hearsay); *Commonwealth v. Collins,* 550 Pa. 46, 58–60, 703 A.2d 418, 424–25, *cert. denied,* 525 U.S. 1015, 119 S.Ct. 538, 142

19. The prosecutor read Williams's written statement, which Williams had signed, after Williams took the stand and denied having seen the shooting or having told the police anything about the shooting. Appellant does not challenge the admissibility of the statement generally. *See Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992)(prior inconsistent statement of non-party witness that has been reduced to writing and signed by declarant is admissible as substantive evidence).

L.Ed.2d 447 (1998)(victim's statement that appellant had shot her in the past and would shoot her in the head if she messed up a drug package in her possession admissible under state-of-mind exception to prove motive). Because the statement was admissible, this claim lacks merit and counsel was not ineffective for failing to object.

██ Furthermore, even if the statement arguably was not admissible, the statement was merely corroborative of the testimony of Grant and Kirkman that appellant sold drugs and that the victim had received drugs from appellant and had spent the money. Because the evidence merely corroborated other evidence and the evidence of appellant's guilt—including the testimony of three eyewitnesses—is overwhelming, appellant has failed to establish that the evidence so prejudiced him that the outcome of the trial would have been different had counsel objected. Therefore, even had the statements been improperly admitted, no relief is warranted and this claim is meritless. *Travaglia, supra.*[20]

██ Appellant further asserts that trial counsel was ineffective for calling a detective as a defense witness and eliciting testimony from him regarding the Commonwealth's witness, Natalie Grant. Defense counsel called Detective William Schol, who had previously testified for the prosecution, as a defense witness in an attempt to establish that Natalie Grant's testimony was biased and, therefore, unreliable because the homicide investigators had performed personal favors for her. Specifically, trial counsel elicited from the detective, *inter alia,* that he had driven Grant from the courtroom to the hospital on one occasion to visit her sick infant, which allegedly created

---

**20.** Furthermore, trial counsel's inaction was reasonable in light of Williams's blanket disavowal of his police statement, which contained the challenged hearsay. Moreover, when the prosecution asked Williams if he had made the specific statement at issue, he specifically denied having made such a statement to police or having had such a conversation with the victim. N.T. 1/20/93 at 44–45. Therefore, it was an objectively reasonable strategy for trial counsel to allow Williams to testify without interruption that the information contained in the written statement was not true, and to emphasize that fact on cross-examination rather than focusing on particular aspects of the disavowed statement.

sympathy for the prosecution witness, thereby bolstering her credibility and prejudicing appellant.[21]

In his closing argument in the guilt phase, defense counsel argued that Grant's testimony could not be trusted because she owed a debt to investigators for driving her to the hospital and that her testimony was therefore the product of bias. Trial counsel further suggested that Grant had abused cocaine while pregnant, suggesting that the child was ill as a result. N.T. 1/27/93, at 28. Because counsel used this information in an attempt to discredit Grant in front of the jury, he had a reasonable basis for questioning the detective as he did. Therefore, this claim is meritless.

### Trial court error in the penalty phase

We now address appellant's claims of trial court error during the penalty phase. First, appellant claims that the trial court erred in preventing appellant from presenting exculpatory evidence during the penalty phase that would have demonstrated that the shooting was not drug related. This claim is devoid of merit. Appellant took the stand during the penalty phase and testified concerning his background, family, education and employment history. Appellant's family members also took the stand and testified in his favor. The only evidence that the trial court prohibited appellant from presenting during the penalty phase was statements that he was not guilty of the murder for which he had just been convicted. This limitation was proper. *Franklin v. Lynaugh*, 487 U.S. 164, 173–74, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)(there is no constitutional requirement that a convicted murderer be permitted to argue residual doubt concerning guilt as a mitigating factor); *Commonwealth v. Harris*, 550 Pa. 92, 109–10, 703 A.2d 441, 449–50 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998)(counsel was not ineffective for failing to present the residual doubt evi-

---

**21.** Detective Schol also testified that he had picked up Grant and her baby at the hospital the night before she was scheduled to testify and taken them to get a prescription for the child and that he assisted her with her child on more than one occasion.

dence that two prior juries were hung on the question of appellant's guilt; such evidence has no relevance to the imposition of the penalty). Because the trial court allowed appellant to present all relevant mitigating circumstances, no relief is warranted.

▮▮▮ Appellant next claims that the trial court erred in not striking the testimony of Angelic Kirkman during the penalty phase on the basis that the witness was incompetent. Kirkman testified that she was smoking crack cocaine in a parked car with another woman when she observed appellant shoot the victim and that she overheard appellant make certain remarks while shooting the victim. The trial court asked the witness whether the drugs she had used that night affected her ability to perceive and relay what she saw. The witness indicated that the drugs did affect her perceptions but then stated that she had *not* heard any remarks the appellant made while shooting the victim. Appellant moved to strike her testimony in its entirety.

The trial court overruled the objection and properly determined that it was for the jury to evaluate Kirkman's credibility against the backdrop of admitted drug use on the night of the killing and her testimonial inconsistencies. These factors went to the weight of her testimony, not her competency. *Commonwealth v. Parks*, 453 Pa. 296, 301, 309 A.2d 725, 728 (1973), *cert. denied*, 414 U.S. 1074, 94 S.Ct. 589, 38 L.Ed.2d 481 (1973)(a witness is not incompetent *per se* merely because it is established that he is a drug addict and had taken drugs prior to the incident to which he testifies); *Commonwealth v. Farrell*, 319 Pa. 441, 444, 181 A. 217, 218 (1935)("the use of narcotics may impair mind and memory, the extent of the impairment is for the jury's measurement."). Accordingly, the trial court did not abuse its discretion in failing to strike this testimony.

▮▮▮ Next, appellant asserts that the trial court erred by permitting a prosecution witness to read the contents of an arrest warrant affidavit for a robbery charge against appellant that predated the murder. This claim is meritless because

defense counsel opened the door for such testimony. Initially, we note that, prior to the commencement of the penalty hearing, and again while the penalty hearing was in progress, both defense counsel and the trial court advised appellant that if he testified, evidence of his 1989 robbery conviction would be admitted as a *crimen falsi* crime. Appellant nevertheless chose to testify and the prosecution called as a witness the investigator assigned to the robbery case in order to admit evidence that appellant had pleaded guilty to the robbery charge. The prosecutor questioned the investigator only about the guilty plea. No details about the underlying crime were elicited.

On cross-examination, defense counsel elicited from the investigator that, on the day that appellant pleaded guilty to the robbery, the complaining witness informed the investigator that the circumstances leading to the robbery complaint were a mistake and that he was not interested in pursuing the case further, thereby implying that appellant had pleaded guilty to a crime he did not commit. On rebuttal, the prosecutor had the investigator read the contents of the arrest warrant affidavit from the robbery charge. The affidavit included the facts supporting the robbery charge and the fact that appellant told the complainant that he would kill him if appellant was arrested for the incident.

The admission of rebuttal testimony is within the sound discretion of the trial court. *Commonwealth v. Jones,* 530 Pa. 591, 617, 610 A.2d 931, 942 (1992). The challenged testimony rebutted the implication created by the defense that appellant had not committed the robbery in question. Because defense counsel opened the door during cross-examination, it was not an abuse of discretion for the trial court to allow this rebuttal testimony. Additionally, immediately following the investigator's testimony, the trial court instructed the jury that evidence of the robbery conviction was relevant only to evaluate the credibility of appellant's penalty hearing testimony and that the underlying facts of the conviction were irrelevant to that assessment. We find that the limiting instruction was sufficient and, barring evidence to the con-

trary, will presume that the jury followed this instruction. *Baker, supra* at 559, 614 A.2d at 672. Accordingly, no relief is due on this claim.[22]

Appellant next claims that the trial court erred by failing to permit defense counsel to examine the contents of the affidavit of probable cause for the robbery charges prior to the investigator reading it into evidence. Appellant asserts that, had the court granted defense counsel's request to view the document, he would have seen the inflammatory and prejudicial statements and requested redaction. Initially, we note that the court properly denied defense counsel's request to view the document while the prosecutor was showing it to the witness. The document was used only for rebuttal during the penalty hearing for the purpose of refuting a defense claim that the police had engaged in improper conduct—arresting appellant for a crime he did not commit. The trial court also properly determined that the affidavit was not subject to pre-trial discovery, as it did not contain exculpatory information and had no relation to the murder for which appellant was on trial. A further review of the record reveals that the trial court ordered the prosecutor to turn over the affidavit to defense counsel at the conclusion of the prosecutor's re-direct examination of the witness. Defense counsel did not request a recess in order to examine the document and instead cross-examined the witness about matters relating to the affidavit. Accordingly, no relief is due on this claim.[23]

Next, appellant alleges that the trial court erred by admitting evidence of appellant's previous drug activity. The court had initially granted appellant's motion *in limine* precluding the Commonwealth from presenting evidence of appellant's 1992 conviction for drug-trafficking during its case-in-chief in

---

**22.** Appellant further claims that the trial court erred for failing to grant a mistrial after the affidavit supporting the warrant for the robbery charge was read into evidence. Because, we have concluded that the trial court properly admitted the evidence, we find that the trial court also properly denied the motion for a mistrial.

**23.** Moreover, there is no allegation that appellant had not been provided with a copy of the affidavit at the time that he pleaded guilty; therefore, such evidence was arguably already in his control or at least within his knowledge.

the penalty phase. However, the court conditioned its ruling on whether appellant presented mitigating evidence that would make the prior drug conviction appropriate rebuttal evidence. Appellant took the stand on his own behalf during the penalty phase and asserted the "catch-all" mitigating circumstance regarding any other evidence of mitigation concerning his character and record and the circumstances of the offense. *See*, 42 Pa.C.S. § 9711(e)(8).

In an effort to show that appellant did not earn money by dealing drugs as the prosecution alleged, appellant testified on direct examination that he made his living as a professional boxer. The trial court correctly determined that this testimony opened the door for the prosecutor to inquire on cross-examination about other ways in which appellant made money. *Commonwealth v. LaCava*, 542 Pa. 160, 188, 666 A.2d 221, 234 (1995)(prosecutor correctly questioned defendant concerning what he told a witness because, having "opened the door" to the subject on direct, defendant could not complain because the Commonwealth chose to further examine what was behind that door). Appellant testified on cross-examination that he earned money as a boxer, tailor and pool hustler. He further testified on cross-examination that Jamaican drug-dealers once solicited him to work for them as a security guard but he declined the offer. Appellant denied that he became involved in selling drugs. N.T. 2/2/93 at 138. In rebuttal, the prosecutor impeached appellant's testimony by presenting evidence of appellant's arrest for selling drugs in October of 1991, an arrest that resulted in a conviction in April of 1992. Because this evidence was properly admitted to rebut appellant's testimony that he never sold drugs, this claim is meritless.

Appellant next claims that the trial court erred in providing the jury with seven examples of aggravating circumstances while failing to provide any examples of mitigating circumstances.[24] The law of this Commonwealth does not

24. This claim is technically waived due to appellant's failure to object at trial. Nevertheless, we will address the issue pursuant to the relaxed waiver rule. *Zettlemoyer, supra*, at 26 n. 3, 454 A.2d at 942 n. 3.

require a trial court to provide any examples of aggravating or mitigating circumstances. Here, in order to aid the jury in understanding the aggravating circumstance asserted by the prosecution – that appellant knowingly created a grave risk of danger to another person in addition to the victim of the offense – the trial court presented brief fact patterns derived from case law as illustration. The court merely provided clarification on a point of law that was not within the common experience of jurors. In addition, after deliberating for a full day on the penalty, the jury requested the trial court to reissue the instructions in their entirety and the court complied but omitted the examples in the second set of instructions. Finally, appellant's claim that the court "imbalanced" the charge resulting in prejudice to him is insupportable in light of the fact that that jury found *both* mitigating circumstances asserted by appellant.

 Next, appellant asserts that, during closing argument in the penalty phase, the prosecutor committed misconduct by referring to striken testimony of Natalie Grant.[25] N.T. 2/3/99 at 10–11. The prosecutor mentioned in closing that Natalie Grant was one of the persons whose testimony supported the conclusion that appellant killed the victim because a drug relationship had gone sour. Trial counsel objected to the closing assertion. The trial court sustained the objection and ordered the jury to disregard the prosecutor's comments. Absent evidence to the contrary, the jury is presumed to have followed the court's instructions. *Baker, supra,* at 559, 614 A.2d at 672. Additionally, this statement by the prosecutor is harmless error in light of the other admissible evidence that the murder was drug related.[26]

**25.** This claim is technically waived due to appellant's failure to object at trial. Nevertheless, we will address the issue pursuant to the relaxed waiver rule. *Zettlemoyer, supra,* at 26 n. 3, 454 A.2d at 942 n. 3.

**26.** Angelic Kirkman testified that the victim had told her that he was supposed to sell drugs for appellant and had not given appellant the money for the drugs. N.T. 2/1/93 at 26–30. Additionally, in testimony that was not objected to and thus admitted, Natalie Grant testified that appellant asked her to identify houses from which he could buy drugs and gave her his pager number to call with that information. N.T. 1/25/93 at 7–10.

*Ineffectiveness of trial counsel in the penalty phaseci*

We next address appellant's claims of ineffective assistance of counsel during the penalty phase. First, appellant claims that trial counsel was ineffective for failing to question Angelic Kirkman regarding her competency to testify because it appeared that she was under the influence of drugs and falling asleep while on the witness stand. However, a review of the record reveals that counsel did question Kirkman regarding whether she was using drugs or was falling asleep on the stand. N.T. 2/1/99 at 33-34, 65-67, 76-77. Therefore, this claim is meritless.

Appellant also claims that defense counsel prejudiced him by stating in his closing argument that the case was about drugs. Appellant raised this claim in the form of a question presented for review, but fails to develop this claim by pointing to the specific portion of defense counsel's closing argument to which he objects. Rather, in appellant's brief, he challenges only the *prosecutor's* closing argument, not defense counsel's closing argument, where the prosecutor mentioned appellant's connection with drugs and asserts that defense counsel was ineffective for failing to object to the prosecutor's argument.[27]

We have reviewed the portion of the prosecutor's closing referenced by appellant and find that the prosecutor's statements were fair comment on the evidence presented at trial that appellant was involved in dealing drugs and that the murder was drug related. The statements were not inflammatory or prejudicial under the circumstances. Several witnesses had testified regarding appellant's involvement with drugs.[28] Thus, defense counsel was not ineffective for failing to object.

27. Specifically, the prosecutor stated:
 When he took the stand yesterday and had people testify on his behalf, if there was a real reason for his activities in dealing drugs and there was a real sense of honesty and true remorse of his killing of Vaughn Christopher because of drug involvement, he would have told you; he would have admitted it like a man and he would have, at that time, asked you for mercy.
 N.T. 2/3/93 at 7.

28. During the penalty phase, the Commonwealth presented the testimony of Angelic Kirkman that appellant had killed the victim over a drug

Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court has a duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the findings of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.[29]

 After reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor, but rather was based upon the testimony of the eyewitnesses. In addition, we find that the evidence was sufficient to establish the aggravating factors found by the jury: that appellant knowingly created a grave risk of danger to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7), and that at the time of the killing, the victim was or had been involved or in competition with appellant in the illegal sale, manufacture, distribution or delivery of any controlled or counterfeit controlled substance, and the killing resulted from or was related to the association or competition to promote appellant's illegal activities, 42 Pa.C.S. § 9711(d)(14).

transaction, N.T. 2/1/93 at 26–30, and established appellant's previous conviction for possession with intent to distribute cocaine. N.T. 2/2/93 160–62. Finally, in testimony that was not objected to and thus admitted, Natalie Grant had also testified that appellant asked her to identify houses from which he could buy drugs and gave her his pager number to call with that information. N.T. 1/22/93 at 7–10.

29. Effective June 25, 1997, the General Assembly repealed 42 Pa.C.S. § 9711(3)(h)(iii), pursuant to which this review was required. However, we continue to review for proportionality all cases on direct appeal in which the sentence of death was imposed prior to that date. *See Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426 (1997), *cert. denied*, 525 U.S. 1005, 119 S.Ct. 519, 142 L.Ed.2d 430 (1998)(Act 28 does not apply retroactively).

Moreover, in accordance with *Zettlemoyer, supra* at 26, 454 A.2d at 942, we must conduct a proportionality review as to appellant's sentence of death. Here, since the jury found that the two aggravating circumstance outweighed the two mitigating circumstances, the jury was statutorily required to impose a sentence of death. 42 Pa.C.S. § 9711(c)(1)(iv). Further, we have conducted an independent review of similar cases and reviewed the data compiled by the Administrative Office of Pennsylvania Courts in which the sentence of death was made mandatory by the finding of aggravating factors that outweighed mitigating circumstances and conclude that the sentence of death imposed upon appellant is not disproportionate to the sentences imposed in similar cases. Accordingly, we affirm the verdict and the sentence of death imposed upon appellant by the Court of Common Pleas of Philadelphia County.[30]

Justice SAYLOR files a concurring opinion in which Chief Justice FLAHERTY and Justice ZAPPALA join.

SAYLOR, Justice, concurring.

I join the majority opinion, save for the conclusion that the victim's out-of-court statement "that he had f——ed up a package of dope that belonged to [Appellant]" was admissible under the state of mind exception to the hearsay rule. I would not permit the state of mind exception to be employed, as it is here, to support the general admission of a statement of memory or belief about a past event, as traditional hearsay dangers of fabrication, faulty memory and incorrect narration are implicated by such use. Moreover, since this manner of application could be extended to a broad range of statements, it effectively undermines the hearsay rule. In my view, application of the state of mind exception should be reserved for statements of intention offered to establish that a declarant acted in conformity therewith, *see, e.g., Commonwealth v.*

30. The Prothonotary of this Court is directed to transmit to the Governor's office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).

*Collins,* 550 Pa. 46, 59–60, 703 A.2d 418, 424–25 (1997), *cert. denied,* 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998); and statements which directly indicate the declarant's mental state at the time that the statement was made, where the declarant's state of mind is at issue in the case. *See, e.g., Commonwealth v. Auker,* 545 Pa. 521, 547, 681 A.2d 1305, 1319 (1996).[1] *See generally* Pa.R.E. 803(3).[2]

Because I believe that the hearsay evidence concerning the victim's statement should not have been admitted under our evidentiary rules, I would find that counsel was ineffective for failing to lodge an appropriate objection. I do agree with the majority, however, for the reasons stated in its opinion, that such ineffectiveness did not prejudice the outcome of the trial.

Chief Justice FLAHERTY and Justice ZAPPALA join this concurring opinion.

---

1. With regard to these forms of statements, reliability may be inferred because of spontaneity and reflection of a then-existing condition of mind or emotion, *see* 2 McCormick, EVIDENCE, § 274, at 217 (5 th ed.1999); nevertheless, the out-of-court statement "ought to be accompanied by other, not inconsistent, evidence." *Commonwealth v. Marshall,* 287 Pa. 512, 523, 135 A. 301, 305 (1926), *cited in* Comment to Pa.R.E. 803(3). Additionally, where hearsay is admitted pursuant to the state of mind exception, it should be accompanied by a limiting instruction. *See generally United States v. Brown,* 490 F.2d 758, 763 (D.C.Cir.1973).

2. In the specialized context of decedents estates, Pa.R.E. 803(3) would permit admission of a statement of memory or belief offered to prove the fact remembered or believed if it relates to the execution, revocation, identification, or terms of the declarant's will.