J. S20026/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                            :          PENNSYLVANIA
               v.          :
                            :
TARIK BAGLEY,            :         No. 2419 EDA 2016
                            :
           Appellant     :

Appeal from the PCRA Order, June 30, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0000553-2011
CP-51-CR-0009928-2010

BEFORE:  BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MAY 16, 2017**

Tarik Bagley appeals from the order entered in the Court of Common Pleas of Philadelphia County that dismissed his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court set forth the following:

> On January 14, 2013, after arrest and consolidation of the above matters, [appellant] appeared before this Court and elected to be tried by jury.  On January 22, 2013, the jury returned guilty verdicts of First-Degree Murder, Firearms Not to be Carried Without a License (three counts), Carrying Firearms in Public in Philadelphia (three counts), and Possession of an Instrument of Crime ("PIC") (three counts), Conspiracy (two counts), and Reckless

Endangerment of Another Person ("REAP")[1] (two counts).

On March 11, 2013, in CP-51-CR-0009928-2010, this Court imposed consecutive sentences of two to four years [of] imprisonment for Firearms Not to be Carried Without a License and one to two years [of] imprisonment for two counts of REAP. In CP-51-CR-0000553-2011, this Court imposed the mandatory sentence of life imprisonment without parole for First-Degree Murder, and a concurrent term of one to two years [of] imprisonment for Firearms Not to be Carried Without a License, to be served consecutively to the penalty in CP-51-CR-0009928-2010, for a total sentence of three to six years plus life imprisonment without parole.[Footnote 1]

> [Footnote 1] This Court imposed no further penalty for each of the remaining offenses.

On March 15, 2013, [appellant] filed a timely Notice of Appeal. On April 30, 2014, the Superior Court affirmed [appellant's] Judgment of Sentence. On August 25, 2014, the Supreme Court denied Allowance of Appeal.

On August 5, 2015, [appellant] filed a timely **pro se** [PCRA] petition. On November 23, 2015, [appellant], through counsel, filed an amended PCRA petition. On January 22, 2016, the Commonwealth filed a Motion to Dismiss. On March 3, 2016, this Court granted [appellant] an evidentiary hearing limited to the issue of trial counsel's ineffectiveness for failing to call potential defense witnesses. On May 16, 2016, this Court presided over a bifurcated evidentiary hearing that was completed on May 25, 2016.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, 907, 903, and 2705, respectively.

. . . .

On direct appeal, the Superior Court adopted this Court's statement of the facts and recited them as follows:

On March 7[], 2010, at around 12:28 a.m., police officers, in response to a radio call, arrived at 19th Street and Snyder Avenue in Philadelphia and found a man, later identified as Azzim Dukes, lying on the ground bleeding from the head. Azzim Dukes was pronounced dead at the scene from a single gunshot wound to the head at 12:33 a.m.

Lee Parker, a friend of Dukes, gave a statement to police indicating that a few weeks before his death, Dukes was having a problem with individuals from the area of 18th and Cleveland Streets. While speaking with Dukes and Parker, [appellant] pulled a black automatic handgun out of his waist and placed it in his pocket. After this incident, Parker and Dukes discussed shooting [appellant] in retaliation, and Dukes obtained a .380-caliber handgun.

On March 7[], 2010, Dukes was with a group of friends at his friend's home on 16th and Mifflin Streets. At around midnight, Daud Riley, aware that [appellant] was in the neighborhood and looking for him, asked Dukes to walk him home because he was afraid. When they were walking in the area of 19th Street and Snyder Avenue, [appellant] pulled up in his car and got out. Riley ran when he saw [appellant] pull out a firearm and start shooting. Riley heard about three gunshots.

Officers found Dukes lying on the northwest corner of the intersection of

19th Street and Snyder Avenue with a fully loaded .380-caliber handgun about two and a half feet from him. Officers also recovered one .45-caliber fired cartridge case from the curb line of the 1900-block of Snyder Avenue, one bullet specimen from the Southeast corner of the intersection, and a live .45-caliber cartridge on Snyder Avenue just west of 19th Street. According to Firearms Identification Expert Officer Gregory Welsh, a bullet recovered from Dukes and the bullet fragment recovered from the crime scene had been fired from the same firearm, but not the .380-caliber handgun recovered from the scene.

That same day, at around 6:00 p.m., about sixty to one hundred individuals from the neighborhood held a vigil for Dukes in the area of 19th Street and Snyder Avenue. According to Sabrina Johnson, at around 6:30 p.m., [appellant] and his brother Malik Johnson drove up to the vigil in a green mini-van. From the van, [appellant] shot about five times into the crowd of people attending the vigil. []No one was harmed.[]

Later that evening, Sabrina Johnson, along with her sister and two children, were walking in the area of 16[th] and Mifflin Streets when [appellant] and his brother Malik Johnson drove up in a green mini-van. [Appellant] asked Sabrina Johnson about an individual she did not know and pulled out a silver and black automatic handgun. As Sabrina Johnson began to run away from [appellant,] she heard gun shots. Police Officer Joseph Cosgrove, who had been at 16th and McKean Streets, responded to the scene within a minute after he heard gunshots.

- 4 -

Sabrina Johnson directed Officer Cosgrove to South 18th Street, where she believed [appellant] lived.

Officers recovered surveillance video from the 1600 block of Mifflin Street that confirmed Sabrina Johnson's account of the shooting. The video showed [appellant] on the night of the shooting at 7:51 p.m. exit a mini-van with a firearm and talk to Sabrina Johnson. The video also showed Sabrina Johnson and her sister react in a startled manner to an occurrence off the camera.

That same night, at around 8:30 p.m. at South 18[th] Street, officers pulled over a green mini-van meeting the description of the one involved in the murder and later shootings. [Appellant's] mother, Jean[a]tta Bagley, was driving the mini-van and Deana Parks was a passenger. The mini-van had a bullet hole in the driver's side rear window. Jean[a]tta Bagley gave officers consent to search her home, located at South 18th Street, where officers recovered thirty-six live .45-caliber rounds, nine live .32-caliber rounds, and forty-three live .22-caliber rounds.

After the shooting at the vigil, officers recovered two nine-millimeter fired cartridge casings and a bullet jacket fragment from the area of 19[th] Street and Snyder Avenue. From the area of 16[th] and Mifflin Streets, officers recovered three nine-millimeter fired cartridge casings and two .380-caliber cartridge casings. All seven fired cartridge casings, the two recovered from 19[th] Street and Snyder Avenue after the shooting at the vigil and the

five recovered from 16th and Mifflin Streets, were fired from the same firearm.

On March 16, 2010, the day before the preliminary hearing in this matter, [appellant] called Christine Leeper, Sabrina Johnson's mother, and offered her $2,000 if she and Ms. Johnson did not appear in court the next day.

PCRA court opinion, 7/1/16 at 1-4.

Appellant raises the following issues for our review:

I.    Were [a]ppellant's Sixth Amendment rights under the U.S. Constitution and his rights under Article I sec. 9 of the Pennsylvania Constitution violated when counsel ineffectively simultaneously argued inconsistent alternative defenses to the jury?

II.   Were [a]ppellant's Sixth and Fourteenth Amendment rights under the U.S. Constitution and his rights under Article 1 sec., 9 of the Pennsylvania Constitution violated when counsel ineffectively failed to call witnesses Bernice Akanno and Jeanatta Bagley?

III.  Were [a]ppellant's Sixth Amendment rights under the U.S. Constitution and his rights under Article 1 sec. 9 of the Pennsylvania Constitution violated when counsel ineffectively failed to preserve, obtain and present [defense witness] Ronald Johnson's phone records which would have corroborated [a]ppellant's alibi?

IV.   Did the Cumulative Effect of Ineffective Assistance deny [a]ppellant his constitutional rights under the Sixth and Fourteenth Amendments?

Appellant's brief at 3.

We limit our review of a PCRA court's decision to examining whether the record supports the PCRA court's findings of fact and whether its conclusions of law are free from legal error. ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015) (citations omitted). We view the PCRA court's findings and the evidence of record in a light most favorable to the prevailing party. ***Id.***

To be entitled to PCRA relief, the defendant bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2), which include ineffectiveness of counsel that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i) and (ii); ***see also Mason***, 130 A.3d at 618 (citations omitted).

Here, appellant's claims assert that his trial counsel provided ineffective assistance.

> Counsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner. With regard to reasonable basis, the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, [a] finding that a

> chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. Failure to establish any prong of the [] test will defeat an ineffectiveness claim.

*Mason*, 130 A.3d at 618 (internal quotation marks and citations omitted).

Appellant first complains that trial counsel was ineffective because he argued inconsistent alternative defenses to the jury; specifically, that trial counsel presented an alibi defense, as well as self-defense. The record belies appellant's claim.

In his brief, appellant claims that during trial counsel's opening statement, he "'set up' a self-defense claim" and "never once referred to [appellant] having an alibi." (Appellant's brief at 19.) Appellant further complains that during the trial, trial counsel "continued to develop evidence to establish self-defense," specifically citing to trial counsel's cross-examinations of Daud Riley and Officer Melissa Jones. (*Id.*) Appellant also complains that during closing statements, trial counsel argued facts relevant to self-defense. (*Id.* at 22.) Despite these claims, our review of the record supports the PCRA court's conclusion that trial counsel "unequivocally proffered an alibi defense, and not a theory of self-defense." (PCRA court opinion, 7/1/16 at 5.) Our review of the record also supports the PCRA court's conclusion that although trial counsel proceeded with an

alibi defense, his theory of the case was that because the victim was part of an ongoing dispute involving numerous individuals and because the victim was armed and holding a gun when his body was found, the unknown person who shot and killed the victim likely did so in self-defense. (*Id.* at 5-8.) The record reflects that trial counsel introduced that theory, as well as the alibi defense, in his opening statement, as follows:

> Now, some of the things that I would like you to keep an open mind about in this case the district attorney already talked to you about. One of which is [the victim] wasn't just at the scene of the murder where he was killed. No one disputes he was killed. He's there with a gun. That [witness] Daud Riley isn't just somebody who happened to be there. He's not only [the victim's] friend. He's a convicted felon. He's got other things in his background that I want you to consider. And I'm not going to get into the credibility of all the witnesses because you're going to judge that and we're going to talk about that at the end of this case. Certain things about people's criminal backgrounds are going to come out. Motives and biases and opportunities to lie or fabricate. We will get into that. But I want you to think about that.
>
> I also want you to think about the fact that this neighborhood issue didn't just go one way. That there were two sides to this issue. There are many explanations for why [the victim] was shot. They don't all lead back to [appellant]. You're going to hear certain evidence from [appellant], and I'm not going to get into all of that right now. But you will hear evidence from our side as to his whereabouts and what happened to him and his family. You will hear evidence that his mini-van was shot at.

Notes of testimony, 1/14/13, Volume I at 41-43.

As for trial counsel's cross-examination of Daud Riley, the record reflects that although Mr. Riley gave a statement to police that he was with the victim at the time appellant confronted them with a firearm, Mr. Riley retracted his statement and testified on direct and cross-examinations that he was not with the victim on the night of the murder; that he did not know the victim; that he did not remember making contrary statements to the police; and that the police obtained a statement from someone else and forced Riley to sign that statement. (Notes of testimony, 1/15/13 at 39-91.) The record of Mr. Riley's testimony, therefore, belies appellant's claim that cross-examination advanced the inconsistent defense theories of alibi and self-defense.

With respect to Officer Jones's testimony, appellant complains that trial counsel "intentionally elicited testimony that [the victim] had been found with his hands outside his pockets and his right hand just to the left of where the un-fired weapon had been found." (Appellant's brief at 19.) Appellant fails to explain how testimony regarding the circumstances surrounding the position of the victim's body at the time it was discovered supports his ineffective assistance of counsel claim based on inconsistent defenses.

Finally, with respect to trial counsel's closing argument, again, the record demonstrates that trial counsel presented an alibi defense and

incorporated his theory that the unknown assailant who killed the victim did so in self-defense, as follows:

> And you heard where [appellant] was. You heard his uncle come up here and say where he was. From before midnight to after. And the Commonwealth cross-examined him extensively on that about the details of it. About where they went. About who they were with. He didn't waiver [sic]. He didn't shake on it. He said where [appellant] was. He said [appellant's] mother knew where he was, where they were.
>
> And what did the government use to rebut that? Nothing. Did they bring somebody in to refute it? To say that the car was never there? Didn't show up where Johnson was going to Bernice's house? No. . . .
>
> . . . .
>
> When [the victim] rolls up strapped with a .380 Cobra in his right hand locked and loaded and ready to go with gunpowder residue already in the barrel. Not murder of the first degree. Can't prove anybody had an intent to kill him. Not murder of the third degree. Can't prove anybody had an intent to severely inure [sic] him. And they definitely can't prove whoever it was was [appellant].
>
> . . . .
>
> In summary, you take four things away from this. [Appellant] did not shoot [the victim]. [The victim] showed up at 19th and Snyder with a loaded gun. And whoever encountered him, the government cannot prove to you that person acted with an intent to kill him and did not act defending themselves.

Notes of testimony, 1/18/13 at 27, 35, 50.

The record clearly supports the trial court's conclusion that trial counsel did not present inconsistent defenses. As such, appellant has failed to demonstrate that this claim has arguable merit, and consequently, it necessarily fails.

Appellant next complains that trial counsel was ineffective for failing to interview and call Bernice Akanno and Jeanatta Bagley to testify as defense witnesses at trial. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the petitioner must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on the petitioner's behalf; and (5) that the absence of the testimony prejudiced the petitioner. *Commonwealth v. Fletcher*, 750 A.2d 261, 275 (Pa. 2000). Trial counsel will not be found ineffective for failing to investigate or call a witness unless there is some showing by the petitioner that the witness's testimony would have been helpful to the defense. *Commonwealth v. Auker*, 681 A.2d 1305, 1319 (Pa. 1996).

At the outset, we note that both Ms. Akanno and Ms. Bagley testified at the PCRA evidentiary hearing, and no issues exist as to either witness's existence or availability at time of trial.

With respect to Ms. Akanno, appellant argues in his brief that this potential witness testified "credibly" at the evidentiary hearing and he goes

on to attack trial counsel's credibility. (Appellant's brief at 31-37.) Our standard of review, however, is to examine, in the light most favorable to the Commonwealth as the prevailing party, whether the record supports the PCRA court's findings of fact and whether its conclusions of law are free from legal error. **Mason**, 130 at 617 (citations omitted). Therefore, we decline appellant's invitation to assess the credibility of the witnesses who testified at the evidentiary hearing.

That being said, during the evidentiary hearing, trial counsel testified as to why he did not call Ms. Akanno as a witness, as follows:

> I believe what I asked her was whether or not she could corroborate or substantiate what Mr. Johnson was telling me, which was that he was with [appellant] until about 1 o'clock in the morning and that then [appellant] left Mr. Johnson's presence, and that Mr. Johnson and Ms. Akanno drove to drop off Mr. Johnson together; and my recollection is that Ms. Akanno could not do that. That she -- for one reason or another there were details about what she remembered or what she was able to testify to that did not match what Mr. Johnson was saying in terms of time or location or where she was or what she could say [appellant] did or didn't do when he left the residence or what time that was.

> In addition, she may have said something about drinking that day and being sleepy and that was about the substance of my conversation with her, and based on that I elected not to call her as a witness because I felt that it would not corroborate Mr. Johnson, and in fact could hurt the alibi that [appellant] wanted to present.

> . . . .

> I do recollect that what she said did not match with what Mr. Johnson was telling me, and it also didn't match with what [appellant] had told me, and so I do remember that because it did not square with what the defense was going to be, I was not going to present her[].

Notes of testimony, 5/25/16 at 20-21, 23-24. This testimony, viewed in the light most favorable to the Commonwealth, supports the PCRA court's conclusion that Ms. Akanno's testimony would not have been helpful to appellant because it conflicted with what appellant had told trial counsel, it would not have corroborated Ronald Johnson's testimony, and it conflicted with appellant's alibi defense. Therefore, trial counsel had a reasonable basis for not calling Ms. Akanno to testify at trial.

With respect to Jeanatta Bagley, trial counsel testified that he did not call her to testify that she drove a green minivan much like the green minivan appellant drove because he opted to call Ada Bagley to testify that Ada Bagley was a passenger in Jeanatta Bagley's green minivan when the vigil shooting occurred. (Notes of testimony, 5/25/16 at 28-29.) Trial counsel testified that he decided to call Ada Bagley instead of Jeanatta Bagley to testify that Jeanatta Bagley was driving a green minivan that night because he believed "Ada Bagley would make a better presentation to the jury" and that Jeanatta Bagley's proposed testimony regarding the timeline and location of the vigil shooting would have conflicted with Ada Bagley's testimony. (*Id.* at 33.) Trial counsel testified

that he "elected as a matter of trial strategy to not have [his] own witnesses contradict each other but to present [appellant's] best case forward." (***Id.***)

Appellant nevertheless contends that "it was not objectively reasonable for counsel to simply pretend that these inconsistencies didn't exist. Rather than burying his head in the sand and simply ignoring the evidence of inconsistencies, he should have instead played those inconsistencies up. When presented with lemons, make lemonade." (Appellant's brief at 44.) Appellant's argument is fruitless. Appellant entirely fails to demonstrate that the absence of Jeanatta Bagley's testimony prejudiced appellant and that trial counsel's decision to forego calling her as a witness lacked any reasonable basis designed to effectuate appellant's interest.[2]

Appellant next complains that trial counsel was ineffective for "fail[ing] to preserve, obtain and present Ronald Johnson's phone records which would have corroborated appellant's alibi." (Appellant's brief at 45.) The record again belies appellant's claim.

At trial, Ronald Johnson testified that he did not have any telephone records to support his claim that he telephoned appellant at 11:55 p.m. on the night of the victim's murder; that he no longer had the telephone he

---

[2] We note that throughout appellant's brief, appellant repeatedly misstates the second prong of ***Commonwealth v. (Michael) Pierce***, 786 A.2d 203 (Pa. 2001), and its progeny to require that trial counsel's strategy be "objectively reasonable," as opposed to "lack[ing] a reasonable basis." ***See Mason***, 130 A.2d at 617.

used to place the call; that he did not remember that particular telephone number; and that he never received telephone bills for that telephone. (Notes of testimony, 1/17/13 at 161-164.)   Counsel cannot be deemed ineffective for failing to "preserve, obtain and present" Ronald Johnson's telephone records when Ronald Johnson testified that he did not have those records and that he did not have any memory of any fact that could have led to their discovery.

Appellant finally complains that "the cumulative effect of ineffective assistance denied appellant his constitutional rights[]."  (Appellant's brief at 46 (capitalization omitted).)   Simply stated, because appellant's claims of ineffectiveness entirely lack merit, no "cumulative effect of ineffective assistance" can exist.   Stated differently, and in the words of our supreme court, "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually."  ***Commonwealth v. Reid***, 99 A.3d 470, 520 (Pa. 2014) (citation omitted).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2017

- 16 -