J-A17006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BOBBIE JO BUCHHOLZ, GUARDIAN *AD LITEM* FOR BRADLEY TAYLOR RICHARDS, AN INCAPCITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1348 WDA 2017 |
| CHARITY IMMEL | : | |

Appeal from the Judgment Entered October 24, 2017
In the Court of Common Pleas of Mercer County
Civil Division at No(s):  2011-4296

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:            **FILED APRIL 3, 2019**

Bobbie Jo Buchholz, guardian *ad litem* for Bradley Taylor Richards ("Mr. Richards"), an incapacitated person, appeals from the judgment entered October 24, 2017,[1] in the Mercer County Court of Common Pleas, in favor of appellee, Charity Immel, in this negligence action.  On appeal, Ms. Buchholz

---

[1] We note Ms. Buchholz's notice of appeal, which was filed on September 20, 2017, purports to appeal the May 15, 2017, jury verdict and September 6, 2017, order denying her post-trial motions, neither of which are appealable. However, judgment was subsequently entered on the verdict following a *praecipe* by Ms. Buchholz on October 24, 2017.  Pursuant to Pennsylvania Rule of Appellate Procedure 905(A)(5), "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."  Therefore, we have corrected the caption to indicate the appeal is from the judgment entered on October 24, 2017.

contends the trial court erred in (1) determining she failed to file a timely concise statement pursuant to Pa.R.A.P. 1925(b), thereby waiving all issues on appeal; (2) charging the jury on the sudden emergency doctrine; and (3) permitting evidence concerning the amount of alcohol purchased by eyewitness Dustin Richards ("Dustin"), Mr. Richards' brother, on the day of the accident. For the reasons below, we reverse and remand for a new trial.

The trial court summarized the facts underlying this lawsuit as follows:

> On August 28, 2011, [at approximately 8:30 p.m.,] Mr. Richards, his brother, Dustin, Harry Turk, Jr., and [Cherea] Smith were walking east on Hamburg Road . . . They were returning to Greenville after an afternoon and evening of crawfish fishing. They were walking with the traffic.
>
> Hamburg Road in that area is a two-lane highway with no real berm. There are no streetlights in the area in question.
>
> [Ms. Immel] was proceeding east on Hamburg Road, driving home. Her headlights were on. She was momentarily blinded by the lights of an oncoming vehicle and took her foot off the accelerator. She saw something brown and white move from the side of the road into her lane and, as a result, swerved left to avoid the object. She struck the object, which turned out to be Mr. Richards. She never saw Mr. Richards or the other three people before the accident.

Trial Court Opinion, 9/6/2017, at 2. Mr. Richards suffered catastrophic injuries in this accident, rendering him an incapacitated person.

On December 15, 2011, Ms. Buchholz, as guardian for Mr. Richards, filed a negligence action against Ms. Immel, claiming, *inter alia*, Ms. Immel operated her vehicle in a "careless and inattentive manner" on the day in question. Complaint, 12/15/2011, at ¶ 10(a). During discovery, it became evident that at least some members of the group, particularly Dustin and

Cherea Smith ("Ms. Smith"), had been drinking on the day of the accident. However, there was no evidence that Mr. Richards consumed alcohol to the point that he was intoxicated. Moreover, the evidence revealed that one member of the group had been pushing a baby stroller containing a cooler of beer at the time of the collision.

Accordingly, Ms. Buchholz filed a motion in *limine* to preclude any testimony concerning Mr. Richards' alcohol consumption on the day of the accident, as well as testimony regarding the stroller of beer. The trial court entered the following order:[2]

> AND NOW, this 26th day of April, 2017, it is hereby ORDERED and DECREED that [Ms. Buchholz's] Motion in *Limine* to Preclude Testimony regarding Bradley Richards' alcohol consumption, the presence of the stroller at the crash scene, or any beer in the stroller is hereby GRANTED. [Ms. Immel] is prohibited from asking about and/or attempting to introduce evidence of Bradley Richards' alcohol consumption, the presence of the stroller at the crash scene, or any beer in the stroller.

Order, 4/26/2017.[3]

_____

[2] It merits mention that in her response to Ms. Buchholz's motion in *limine*, Ms. Immel noted that she believed Mr. Richards "consumed copious amounts of alcohol during the hours leading up to the accident." However, she conceded she was "not in possession of scientific evidence as would corroborate" that fact, and "under the prevailing appellate case law in Pennsylvania, evidence that [he] consumed alcohol before the accident is not admissible." Defendant's Omnibus Response to Plaintiffs' Motions in Limine, 4/20/2017, at 11. See also ***Sentz v. Dixon***, 302 A.2d 434 (Pa. 1973) (discussed ***infra***).

[3] The trial court also granted Ms. Buchholz's motions in *limine* seeking to preclude the testimony of witnesses who observed pedestrians walking on the road sometime prior to the accident, and evidence of Dustin and Mr. Richards'

The case proceeded to a bifurcated jury trial. During cross-examination of Dustin, counsel for Ms. Immel asked him about his consumption of alcohol on the day of the accident. Counsel for Ms. Buchholz objected based upon the motion in *limine*. The court, however, permitted questions regarding Dustin's intoxication to the extent it affected his perception and memory of the accident. **See** N.T., 5/10/2017, at 69-72. During the ensuing questioning, Ms. Buchholz's attorney also asked Dustin about the amount of alcohol he purchased on the day of the accident. **See id.** at 72-78.

On May 12, 2017, the trial court conducted a charging conference where Ms. Buchholz's attorney objected to Ms. Immel's request for an instruction on the sudden emergency doctrine. The court ruled the charge was proper based on the evidence presented at trial. Thereafter, on May 15, 2017, the jury returned a verdict finding Ms. Immel was not negligent. Ms. Buchholz filed a timely motion for post-trial relief on May 23, 2017.

On May 24, 2017, the trial court entered an order, scheduling a conference for August 7, 2017 and directing Ms. Buchholz to file a "statement of matters complained of" prior to the conference. Order, 5/24/2017. Ms. Buchholz filed a "Concise Statement of Matters Complained of on Appeal" on July 31, 2017. Thereafter, the trial court denied her post-trial motion by order

_____

prior bad acts. **See** Orders, 4/26/2017. Moreover, the court granted a motion in *limine* filed by Ms. Immel seeking to exclude testimony that she was "flying" on the road prior to the accident, and was using her cell phone. Order, 4/26/2017. The court, however, permitted Dustin to testify that Ms. Immel had her head down at the time of the accident and a blue light emanated from inside the vehicle. **See** N.T., 4/26/2017, at 22.

entered September 6, 2017. Ms. Buchholz then filed a premature notice of appeal on September 20, 2017. The next day, trial judge scheduled a post-appeal conference and ordered Ms. Buchholz to file another concise statement. *See* Order, 9/21/2017. Ms. Buchholz did not do so.

On October 24, 2017, after this Court indicated that judgment had not been entered on the verdict, Ms. Buchholz praeciped for entry of judgment. On December 31, 2017, the trial judge retired and Senior Judge John C. Reed took over this case. In February 2018, Judge Reed filed an opinion concluding that Ms. Buchholz had waived all her appellate issues, because she failed to file a secondary 1925(b) statement.

Before we address the substantive issues on appeal, we must determine whether Ms. Buchholz preserved her issues for review. The failure to comply with a trial court's order directing the filing of a Pa.R.A.P. 1925(b) statement of matters complained of on appeal results in automatic waiver of all issues raised on appeal. *See Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224 (Pa. Super. 2014) (en banc).

We find no waiver. Ms. Buchholz filed a timely, premature, "concise statement" when first ordered to do so by the trial judge. When he directed her to file another concise statement in September of 2017, Ms. Buchholz avers she consulted with Ms. Immel's attorney, and then contacted the court's staff to inquire whether she needed to file a second concise statement. *See* Buchholz's Brief at 20. She contends she was advised by trial court staff that "a second 'Statement' would not be necessary and that the scheduled Post-

Appeal Conference would be cancelled."[4]  *Id.*  Ms. Buchholz asserts Judge

Reed was unaware of this history when he took over the case.  *See id.*

Ms. Buchholz timely complied with the premature order to file a concise

statement.  The issues she raised therein are identical to the ones she raises

on appeal.  Moreover, the trial judge filed a brief opinion disposing of those

claims when denying her post-trial motions.  Accordingly, we conclude that

Ms. Buchholz has substantially complied with the Rules of Appellate Procedure

and any confusion below amounted to a breakdown in court proceeding not of

her control.  Thus, she has not committed wavier under 1925(b).

I.

For her first appellate issue, Ms. Buchholz argues the trial court erred

when it instructed the jury on the sudden emergency doctrine, when the

evidence did not support such a charge.  *See* Buchholz's Brief at 19.

Our standard of review of a challenge to the trial court's jury charge is

as follows:

> When reviewing a claim that the trial court erred in instructing the
> jury, the scope of appellate review is whether the court committed
> a clear abuse of discretion or an error of law, which controlled the
> outcome of the case.  This Court will look at the charge in its
> entirety against the background of evidence in the case to
> determine whether error was made and whether it was prejudicial.
> When the facts are in dispute, the trial court's charge should
> address any theory or defense that has support in the evidence.

---

[4] We note Ms. Immel does not dispute or address the concise statement claim
in her brief.

*Cunningham v. Byers*, 732 A.2d 655, 657 (Pa. Super. 1999). However, "[t]he law is clear that a trial court is bound to charge only on that law for which there is some factual support in the record." *Lockhart v. List*, 665 A.2d 1176, 1179 (Pa. 1995).

The sudden emergency doctrine is an affirmative defense "to a party who suddenly and unexpectedly finds him or herself confronted with a perilous situation which permits little or no opportunity to apprehend the situation and act accordingly." *Id.* at 1180. Nevertheless, "[o]ne invoking the defense of sudden emergency cannot be responsible for creating that very peril and is ordinarily excused from liability because he lacked the time to react as he would have done under otherwise foreseeable circumstances." *McKee by McKee v. Evans*, 551 A.2d 260, 273 (Pa. Super. 1988) (*en banc*), *appeals denied*, 562 A.2d 824, 827 (Pa. 1989). Consequently, the defense is unavailable to someone who was driving "carelessly or recklessly." *Lockhart*, *supra*, 665 A.2d at 151.

In *McKee*, *supra*, an *en banc* panel of this Court explained what constitutes a "sudden emergency" sufficient to invoke the doctrine:

> That which gives rise to the emergency must come about suddenly, without warning, and any action taken to save oneself from the sudden peril must occur spontaneously without time for deliberate reflection. Otherwise, if the actor has time to avoid the ultimate mishap and fails to act accordingly, the emergency ceases to be. This is consistent with the well-settled holding of our courts in the context of motor vehicle accident cases that a sudden emergency presupposes the unexpected interjection of a moving object or instrumentality into a driver's path of travel. Consequently, evidence of confrontation with pre-existing, static

road conditions does not properly call for an instruction on the applicability of the sudden emergency doctrine.

Situations other than moving objects also may qualify to successfully invoke the sudden emergency doctrine. A typical but non-exclusive list includes the appearance of a dust cloud, a sudden blocking of the road, the sudden swerving of another vehicle or blinding lights, deer standing in the roadway, and, even brake failure.

However, the unforeseen movement of an object or the sudden apparition of an obstruction on the roadway do not perforce trigger the applicability of the doctrine.

*McKee*, *supra*, 551 A.2d at 273-274 (internal citations and footnote omitted).

Here, Ms. Buchholz argues the trial court erred in charging the jury on the sudden emergency doctrine, because "Ms. Immel simply was not confronted with any 'Sudden Emergency.'" Buchholz's Brief at 23-24. Ms. Buchholz asserts Ms. Immel never identified the sudden emergency she purportedly faced, but theorizes the claim must be based on one of two events: (1) the approaching vehicle's headlights that momentarily blinded her, or (2) the "alleged right to left movement of something in Ms. Immel's path." *Id.* at 24.

As to the oncoming headlights, Ms. Buchholz maintains that because Ms. Immel testified she could see the vehicle approaching in the distance, the headlights would not constitute a sudden emergency. Indeed, she explained, "there was nothing sudden and unexpected about Ms. Immel encountering another vehicle on a two-lane roadway at night with its headlights on." Buchholz's Brief at 26. Ms. Buchholz states the fact that Ms. Immel chose to "look at the lights directly enough, and for long enough to allow her vision to

be obstructed for a period of three seconds," rather than slow down or stop, was a dangerous circumstance of her own making. *Id.*

With regard to movement in her lane, Ms. Buchholz insists "Ms. Immel's own testimony confirms the finding that . . . Mr. Richards and his companions were static objects in the road, travelling in the same direction as Ms. Immel, that were not thrust or propelled in to the road so as to cause a sudden emergency." *Id.* at 29. She argues Ms. Immel violated the assured clear distance rule,[5] which requires drivers to be on the lookout for potential hazards, such as pedestrians. *See id.* at 30. Ms. Buchholz maintains a pedestrian walking on the roadway "cannot be said to constitute a 'sudden' and 'unexpected' event[,]" and had Ms. Immel been driving prudently, she would have seen Mr. Richards before striking him. *Id.* at 31. Ms. Buchholz further emphasizes there was no evidence Mr. Richards walked from the side of the road onto the roadway because Ms. Immel was unable to identify where he came from. *See id.* at 32-33. She argues:

> there is no reason that Ms. Immel should not have seen . . . Mr. Richards in the road or on the fog line, until he was in her windshield, other than she was not paying adequate attention to the road ahead of her, and/or going too fast for the conditions.

*Id.* at 34.

The trial judge addressed this claim in his opinion accompanying the order denying Ms. Buchholz's post-trial motions. He opined that Ms. Immel:

---

[5] *See* 75 Pa.C.S. § 3361.

testified that she was momentarily blinded by an oncoming vehicle and then something brown and white moved from the side of the road into her lane of traffic. ([N.T., 5/11/2017, at] 27-29). If the jury found this testimony to be credible, then the "Sudden Emergency" Doctrine would be applicable.

Trial Court Opinion, 9/6/2017, at 5-6.

We find no abuse of discretion here. Ms. Immel testified that as she drove on the stretch of Hamburg Road, she "dropped her high beams" when she noticed headlights coming towards her; the vehicle was traveling "a little bit quicker than [she] thought and the lights were quite bright." N.T., 5/11/2017, at 27. She testified that she:

> was having a hard time seeing. I took my foot off the accelerator and kind of turned my eyes down and to the right a little bit. I perceived motion which I assumed was deer, because having traveled that route so often I was familiar with a lot of deer travels there. So I immediately cut my car to the left to try to avoid hitting it; and at the same time I realized it was a person.

*Id.* Ms. Immel estimated she was blinded by the oncoming headlights from the "higher-sitting" vehicle for a "couple of seconds; three seconds." *Id.* at 28. She stated she looked "down and to the right … trying to keep [her] eye on the fog line." *Id.* Ms. Immel explained she saw something "brown and white" move from right to left into her lane, and "almost at the exact point of impact," she realized she collided with a person, rather than a deer. *Id.* 29. *See also id.* at 41.

Ms. Immel's testimony, which the jury credited as evidenced by the verdict, was sufficient to support a defense based on the sudden emergency doctrine. While Ms. Buchholz criticizes Ms. Immel for failing to see the

pedestrians walking on the roadway prior to the collision, we note both Dustin and Mr. Turk testified they did not see or hear Ms. Immel's car approaching. *See* N.T., 5/10/2017, at 10, 58-59, 69. Furthermore, neither Mr. Turk nor Ms. Smith witnessed the impact, so they could not determine where Mr. Richards was on the roadway. *See id.* at 9, 21. Although Dustin claimed Mr. Richards was on the fog line when Ms. Immel's car hit him,[6] the jury may have rejected that testimony and concluded Mr. Richards strayed into the roadway.[7]

We also reject Ms. Buchholz's claim that the doctrine does not apply, because Mr. Richards and his companions were "static objects in the road, traveling in the same direction as Ms. Immel, that were not thrust or propelled in to the road so as to cause a sudden emergency." Buchholz's Brief at 29.

First, Ms. Buchholz does not contend Mr. Richards was standing still on the side of the road when Ms. Immel's car hit him. Rather, the record shows he was walking with traffic. *See* N.T., 5/10/2017, at 6, 19, 83-84. Second, our precedents do not support Ms. Buchholz's insistence that a sudden emergency requires an object to be "thrust or propelled" onto the roadway. As the *en banc* panel explained in *McKee*, *supra*, "situations other than

---

[6] N.T., 5/10/2017, at 59.

[7] Significantly, Ms. Buchholz's own accident-reconstruction expert testified that based on the point of impact and where the body landed, he believed Mr. Richards was walking on the roadway when Ms. Immel's vehicle struck him. *See* N.T., 5/11/2017 (Testimony of Thomas Langley), at 81. Nevertheless, he opined Ms. Immel should have seen Mr. Richards with enough time to react and avoid the accident. *See id.* at 40, 58.

moving objects may also qualify to successfully invoke the sudden emergency doctrine," such as the sudden blocking of the road, a deer in the roadway, or the appearance of a dust cloud. **McKee**, **supra**, 551 A.2d at 274. **See also Lockhart**, **supra**, 665 A.2d at 1182-1183 (holding stationary truck blocking roadway could constitute sudden emergency; finding error when lower court "focus[ed] solely upon whether an obstacle was stationary or moving, in circumstances where the obstacle was not in plain view for some length of time and/or foreseeable and the person's negligence not apparent").

Here, Ms. Immel testified she saw something move into her lane, without sufficient time to respond. Specifically, she claimed as she looked down and to the right to avoid the oncoming headlights, she saw something brown and white, which she initially believed to be a deer, move from right to left into her lane of travel. **See** N.T., 5/11/2017, at 29. She immediately turned to the left, but could not avoid striking the object, which turned out to be Mr. Richards. The court instructed the jury on the sudden emergency doctrine as follows:

> In this case Ms. Immel claims she is not liable for . . . Mr. Richards' harm because she faced a sudden emergency and responded reasonably under the circumstances. To establish a defense, they must prove to you by a preponderance of the evidence the following:
>
> No. 1, Ms. Immel faced a sudden emergency that required immediate responsive action.
>
> No. 2, that she did not create the sudden emergency, and;
>
> No. 3, that her response to the sudden emergency was reasonable under the circumstances.

She must prove those to you by a preponderance of the evidence.

N.T., 5/15/2017, at 23-24. Ms. Immel's version of the accident supports a sudden emergency charge.

Moreover, we note the court also instructed the jury on the assured clear distance rule. Section 3361 of the Motor Vehicle Code provides, in pertinent part:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and **when special hazards exist with respect to pedestrians** or other traffic or by reason of weather or highway conditions.

75 Pa.C.S. § 3361 (emphasis supplied).

While the assured, clear-distance rule and the sudden-emergency doctrine are "mutually exclusive," the Supreme Court of Pennsylvania has explained that charging on both is sometimes appropriate:

> it is proper to charge the jury as to both doctrines where the evidence does not conclusively establish that it was the negligence of the person claiming the defense of sudden emergency that created the sudden emergency. Thus, where the evidence is such that reasonable minds could differ as to whether a sudden emergency actually existed, both charges should be given.

*Lockhart*, 665 A.2d at 1183 (internal citations omitted).

- 13 -

Such was the case here. Ms. Immel testified she did not see Mr. Richards or his friends walking on the road, and was faced with a sudden emergency when, after being temporarily blinded by oncoming headlights, she saw something move into her lane. Ms. Buchholz, however, contended Ms. Immel should have been able to see Mr. Richards in enough time to avoid the accident. The jury, faced with these competing facts, were properly instructed on both the assured clear distance rule and the sudden emergency doctrine.[8] Accordingly, the first claim warrants no relief.

## II.

As her second appellate issue, Ms. Buchholz claims the trial court abused its discretion by permitting Ms. Immel to introduce evidence regarding the amount of alcohol purchased on the date of the accident.

Ms. Buchholz contends the amount of alcohol **purchased** on the date of the collision was not relevant to the eyewitnesses' ability to perceive the events to which they testified. Buchholz's Brief at 43. Ms. Buchholz argues

---

[8] Our review of the court's charge as a whole reveals it thoroughly instructed the jury on the relevant theories presented by both parties. The court instructed the jury: (1) if they found Ms. Immel violated the assured clear distance statute, "then you have what is called negligence *per se*, meaning [Ms. Buchholz has] established negligence[;]" (2) if the jury found no violation of the statute, Ms. Immel could "still be negligent with everything combined[;]" (3) "[t]he law requires an unremitting vigilance at the wheel, having a constant viewing of what is ahead[;]" (4) "[a] driver cannot claim to have looked and not see[n] those things which are visible[;]" and (5) "[i]f a pedestrian, before being hit, had been on the highway for long enough time so that a careful driver could see him and avoid the accident, then negligence is established." N.T., 5/15/2017, at 18-20.

this information invited the jury to engage in improper guesswork – namely, to deduce that all four of the friends, including Mr. Richards, were drinking prior to the accident.

Our standard of review when reviewing a trial court's decision to admit or to reject evidence is for abuse of discretion. *Partlow v. Gray*, 165 A.3d 1013, 1016 (Pa. Super. 2017) (citation omitted). "Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa. Super. 2005).

Here, the trial court admitted testimony that Ms. Buchholz believes it should have excluded. Regarding such issues, we have stated:

> [r]elevance is a threshold consideration in determining the admissibility of evidence. A trial court may, however, properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Generally, for the purposes of this evidentiary rule, "prejudice" means an undue tendency to suggest a decision on an improper basis. The erroneous admission of harmful or prejudicial evidence constitutes reversible error.

*Partlow* at 1016-1017, (quoting *Rohe v. Vinson*, 158 A.3d 88, 95 (Pa. Super. 2016), *appeal denied*, 176 A.3d 851 (Pa. 2017)).

"All relevant evidence is admissible, except as otherwise provided by law." Pennsylvania Rule of Evidence 402. Testimony is relevant if it makes a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. *See* Pa.R.E. 401(a) – (b).

- 15 -

Before the trial began, the court granted Ms. Buchholz's motion in *limine* precluding any testimony relating to Mr. Richards' alcohol consumption, the presence of the stroller at the crash scene, or any beer in the stroller. Order, 4/26/2017. During the trial, Ms. Buchholz called two eyewitnesses, Dustin and Ms. Smith, to testify about how the accident occurred. During cross-examination of Dustin, counsel for Ms. Immel asked him, "you were extremely drunk at the time of this accident; is that correct?" N.T., 5/10/2017, at 69. Counsel for Ms. Buchholz objected, and at sidebar moved to strike any reference to alcohol based on the pre-trial protective order. *Id*. at 69-70.

The trial court ruled that, if a witness was intoxicated to the point that it affected his memory, the witness' drunkenness was relevant to discredit his perception and recollection of events. *Id*. at 70-71. The court reasoned, "***Consumption*** of alcohol is admissible to show the misunderstanding of what somebody was seeing because of the consumption." *Id.* at 71 (emphasis added).

The sidebar ended, and the court allowed defense counsel to continue his cross-examination.[9] Dustin testified to drinking 22 beers that day. *See id.* at 74. Dustin acknowledged that he started to drink at 8:00 a.m., and he purchased two cases of beer (totaling 60 cans) at 10:00 a.m. *See id.* at 72-74.

---

[9] We acknowledge that the Court instructed the jury that the testimony regarding the consumption of alcohol was only for them to determine Dustin's ability to remember and perceive the events he was describing. We agree that evidence of Dustin's ***consumption*** of alcohol was proper for this purpose.

- 16 -

When Ms. Immel's attorney began questioning Dustin about Mr. Turk's consumption, the trial court initiated another sidebar and instructed defense counsel not to insinuate that the other three friends were drinking. *See id.* at 75. Plaintiff's counsel renewed his argument that defense counsel was implying that all of the friends were drinking that afternoon: "He is trying to paint a picture that, since he bought two 30-packs, and now we have questions about chugging, and the implication is there, Judge." *Id.* The trial court found no violation of the Rules of Evidence, so defense counsel proceeded to elicit from Dustin that he made a second beer run at 4:00 pm for two more cases of beer.

In its opinion, the trial court concluded that the amount of alcohol purchased was relevant to prove Dustin's level of intoxication. It reasoned:

> This Court permitted [Ms. Buchholz] to cross-examine Dustin Richards on his level of intoxication at the time of the accident. Such evidence is admissible so the jury could properly evaluate his credibility, because the use of alcohol can impair a person's mind and memory. *See Commonwealth v. Farrell*, 319 Pa. 441, 444, 181 A.2d 212, 218 (1975). One factor in making that determination is the amount of alcohol a person drinks over a given period of time. The quantity of alcohol purchased, in this case, [four] cases of beer, is an essential fact in helping the jury to decide whether or not to believe [Dustin's] testimony.

Trial Court Opinion, 9/6/2017, at 3.

This reasoning cannot hold. Only the alcohol Dustin actually imbibed is relevant to his level of intoxication and, thus, his perception and memory. The amount purchased beyond what he drank proved nothing more on his drunkenness than his admission had already established. Dustin could have

bought the whole beer distributor, but that would not have made him any drunker.

The trial court's admission of the purchase testimony to help the fact finder decide Dustin's level of intoxication was an abuse of discretion, because making such a causal link, without some proof of consumption, was manifestly unreasonable and clearly erroneous.

We must now decide whether the trial court's abuse of discretion constitutes reversible error. Only an "erroneous admission of harmful or prejudicial evidence constitutes reversible error." ***Partlow***, 165 A.3d at 1016. Ms. Buchholz claims that the admission of the purchase testimony was prejudicial because it insinuated that Mr. Richards was also drinking that day.

In undertaking this query, we are mindful that the Supreme Court of Pennsylvania prohibitted a jury from hearing evidence that a party was drinking, without reasonable proof of intoxication. ***Sentz v. Dixon***, 302 A.2d 434 (Pa. 1973). In ***Sentz***, the Court found testimony that a pedestrian had alcohol on his breath was insufficient to show the pedestrian's degree of intoxication for contributory-negligence purposes, absent additional proof that he was drunk. In ruling that the admission of this testimony was unfairly prejudicial, the Court stated "while proof of intoxication is relevant where recklessness or carelessness is at issue, ***great care should be taken as to whether to admit evidence of drinking and the mere fact of consuming alcohol is not admissible, being unfairly prejudicial, unless it***

*reasonably establishes intoxication*." ***Id***. at 435-36 (citations omitted) (emphasis added).

Based on this principle, Ms. Buchholz filed a motion *in limine* to prevent the jury from impermissibly speculating about whether Mr. Richards was intoxicated at the time of the accident and therefore comparatively negligent. Because the trial court determined pre-trial that insufficient evidence supported a finding that Mr. Richards was intoxicated at the time of the accident, it properly granted the motion *in limine* and precluded any evidence of Mr. Richards' alcohol consumption.

By subsequently allowing the irrelevant testimony on the amount of alcohol Mr. Richards' companions purchased that day, the trial court effectively undid its pre-trial ruling and undermined the Supreme Court's holding in ***Sentz***. The court allowed testimony that the group of friends purchased 132 cans of beer on the day of the accident, inviting the jury to do the math and infer that Mr. Richards was also drinking. The jury was presented with irrelevant evidence of drinking that was unfairly prejudicial to Mr. Richards, a clear violation of ***Sentz***. We conclude that the admission of the purchase testimony constitutes reversible error. ***See id.; Partlow***, ***supra***. A new trial is in order.

Judgment vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judge Musmanno joins the Memorandum.

Judge Ott files a Concurring Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/3/2019</u>